# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 8, 2013          Decided June 4, 2013

No. 10-3010

UNITED STATES OF AMERICA,
APPELLEE

v.

IAN FITZROY WATSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00268-1)

*Edward C. Sussman* argued the cause and filed briefs for the appellant.

*Jonathan David Shaub*, Attorney, United States Department of Justice, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *Elizabeth Trosman*, Assistant United States Attorney, were on brief.

Before: HENDERSON, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Ian Fitzroy Watson (Watson) challenges his conviction on one count of conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841, 846 on several grounds: improper venue; ineffective assistance of counsel; inadmissible evidence seized as the fruit of an illegal vehicle stop; and inadmissible expert testimony of a non-expert witness. We reject his challenges and affirm his conviction.

**I.**

Beginning in late 2001 or early 2002, Elliot Jimmie Reed began purchasing cocaine from Watson on a regular basis. Watson sold the cocaine to Reed at New Reflections Auto Detailing (New Reflections), a Maryland business where Watson worked. Sometimes, Watson sold to Reed through Vincent Millhouse, an intermediary. Reed sold the cocaine he purchased from Watson in Maryland and the District of Columbia (District).

In 2003, the Federal Bureau of Investigation (FBI) began investigating Reed on suspicion of selling cocaine in the District On February 25, 2004, the FBI wiretapped Reed's mobile telephones and intercepted a number of calls between Reed and Watson. FBI agents corroborated the substance of the calls by observing Reed at New Reflections on the days Reed's calls led the agents to believe that he was there to obtain cocaine from Watson.

In November 2004, the FBI executed a search warrant at Reed's residence and found cocaine, marijuana and items used to "cook crack." Reed subsequently agreed to cooperate with the FBI. In January 2005, Reed helped conduct two controlled purchases of cocaine from Watson and Millhouse. The government introduced surveillance footage of both transactions at trial. Before the second transaction, the

government made a photocopy of the money used in the sale, some of which was later found at Watson's Maryland residence.

In the early morning of February 4, 2005, Maryland Police Officer Andy Johnson arrested Watson and his common-law wife, Daisy Torres, after stopping Watson's van as Watson was driving on Interstate 95 in Maryland. Inside the van they found a one-kilogram compressed brick of powder cocaine. The next day, the Maryland State Police executed a search warrant on a Maryland residence believed to be Watson and Torres's. Inside the residence they found, among other things, thousands of dollars in cash, firearms, a digital scale, plastic baggies, razor blades, luxury items, ten brand new Lazy-Boy massaging chairs and a "poster-sized picture" of Watson inside a closet; outside and in two garages at the residence they found a number of different vehicles (including a Hummer H-2, a Cadillac, a John Deere tractor, All-Terrain Vehicles and a golf cart) and various watercraft.

A jury convicted Watson after a six-day trial. The district court subsequently sentenced Watson to 188 months in prison, followed by five years of supervised release. Watson timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Watson first challenges his conviction on the ground that the District Court for the District of Columbia was an improper venue. His argument fails, however, because venue is proper in any jurisdiction where any co-conspirator committed an overt act in furtherance of the conspiracy. *See, e.g.*, *United States v. Brodie*, 524 F.3d 259, 273 (D.C. Cir. 2008), *cert. denied*, 555 U.S. 1204 (2009); *see also* 18 U.S.C. § 3237(a). The evidence establishes that Reed, Watson's co-conspirator, committed overt acts in the District in furtherance

of the conspiracy by selling in the District cocaine sold to him by Watson. *See United States v. Gaviria*, 116 F.3d 1498, 1517 n.23 (D.C. Cir. 1997) ("receiving payment" for cocaine sale is overt act); *United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991) (negotiating cocaine transaction is overt act); *see also United States v. Trenton Potteries Co.*, 273 U.S. 392, 404 (1927) ("[E]ffect[ing] sales within the district . . . . [is an] overt act[ ] sufficient for jurisdictional requirements.").

We likewise reject Watson's related argument that his counsel was constitutionally ineffective by failing to discuss the venue issue with Watson or raise it before trial. *See Strickland v. Washington*, 466 U.S. 668 (1984). To constitute constitutionally ineffective assistance under *Strickland*, the defendant must show his counsel's performance was both deficient and prejudiced the defense. *Id.* at 687. Watson's argument fails the first prong of *Strickland* because counsel does not perform deficiently by declining to pursue a losing argument. *See, e.g.*, *United States v. Kelly*, 552 F.3d 824, 831 (D.C. Cir. 2009) (ineffective assistance claim "plainly fails inasmuch as his counsel was not obliged to raise a meritless defense"); *see also United States v. Carr*, 373 F.3d 1350, 1354 (D.C. Cir. 2004) ("[F]ailure to renew a non-meritorious motion renders a lawyer's performance efficient, not deficient.").

Watson next argues that the district court erred by failing to suppress the cocaine seized from his van because the initial stop of the van was unlawful and therefore the subsequent search and seizure was tainted by the unlawful stop. We disagree. The police may stop a vehicle if "it was objectively reasonable for the officer[ ] who observed [the] vehicle to conclude that a traffic violation had occurred." *United States v. Southerland*, 486 F.3d 1355, 1358 (D.C. Cir. 2007). Moreover, "[t]he police may initiate a stop even if the traffic violation is a minor one." *Id.* at 1359 (traffic stop did not

violate Fourth Amendment when officers believed vehicle's license plate was improperly displayed). Here, Officer Johnson, who stopped Watson's van, testified that he observed that the van (1) was traveling too close to the vehicle ahead of it; and (2) had a "tinted tag cover" that obscured its license plate number. These two facts gave him reason to believe that Watson was violating at least two Maryland traffic laws. *See* MD. CODE ANN., TRANSP. § 21-310(a) ("The driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent . . . . "); *id.* § 13-411(c)(1) ("At all times, each registration plate shall be . . . [m]aintained free from foreign materials, including registration plate covers . . . . "). Because "it was objectively reasonable for [Officer Johnson] to conclude that a traffic violation had occurred," his stop of Watson's van was lawful. *Southerland*, 486 F.3d at 1358. Further, Watson's argument that Johnson's subjective motivation was improper is *nihil ad rem* because, in determining whether a law enforcement officer can stop a vehicle, subjective motivations are irrelevant. *See id.* at 1358-59; *United States v. Washington*, 559 F.3d 573, 575 (D.C. Cir. 2009) ("[T]he officers' actual subjective motives . . . are irrelevant to the Fourth Amendment analysis of the traffic stop . . . .").[1]

Finally, Watson contends that the district court erred in allowing Michael Margulis, a police officer who was not qualified as an expert witness, to offer expert testimony that he found "cocaine residue" on various objects recovered from Watson's residence, including a cheese grater, digital scale

---

[1] In his brief, Watson emphasized that he challenged *only* the initial stop of the van and not a subsequent dog sniff and vehicle search.

and plastic baggies.[2] Because Watson failed to raise this objection at trial, our review is for plain error. *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010). Under plain error review, Watson "must show there is error that is clear or obvious, and the error affected his substantial rights, which in the ordinary case means it affected the outcome of the trial, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Guerrero*, 665 F.3d 1305, 1309 (D.C. Cir. 2011).

Assuming *arguendo* that the district court erroneously admitted Margulis' testimony, *cf. United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) ("knowledge derived from previous professional experience falls squarely within the scope of Rule 702" (quotation marks omitted)), the admission caused no prejudice because the testimony was cumulative of the properly admitted testimony of an expert witness. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Specifically, a chemist also testified on behalf of the government that the substance on the scale, plastic baggies and cheese grater was cocaine. The chemist was duly qualified as an expert witness and Watson does not challenge

---

[2] Watson also contends that Margulis offered improper opinion testimony that (1) men's clothing he found in Watson and Torres's residence would approximately fit Watson and women's clothing he found there would approximately fit Torres; and (2) a notepad he also found there "contains money prices on there and added up as it's a tally sheet." Margulis' testimony regarding the clothing sizes was proper lay opinion testimony, *see* Fed. R. Evid. 701, and, assuming *arguendo* that Margulis should not have characterized the notepad as a "tally sheet," we fail to see any prejudice arising from that testimony, *see United States v. Brinson-Scott*, No. 09-3017, 2013 WL 1876242, at *3 (D.C. Cir. May 7, 2013).

the admissibility of his testimony. Margulis' challenged testimony is merely cumulative of the chemist's properly admitted testimony and its admission was not prejudicial. *See, e.g.*, *United States v. Smith*, 964 F.2d 1221, 1224 (D.C. Cir. 1992) (admission of report alleged to be inadmissible hearsay was, at worst, harmless error because the report "merely reinforced the identical opinion [the chemist who testified as an expert] had already properly offered"); *see also United States v. Powell*, 334 F.3d 42, 47 (D.C. Cir. 2003). Accordingly, Watson cannot establish plain error.

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*